80 F.3d 1372
 1996-1 Trade Cases P 71,360, 96 Cal. Daily
Op. Serv. 2460,
96 Daily Journal D.A.R. 4123
Leonard VINCI, Plaintiff-Appellant,
v.
WASTE MANAGEMENT, INC., an Illinois corporation; Waste
Management of Alameda County, Inc., Defendants-Appellees.
 No. 95-15000.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided April 10, 1996.
 
 Joseph L. Alioto, Law Offices of Joseph L. Alioto, San Francisco, California, for plaintiff-appellant.
 Alfred C. Pfeiffer, Jr., and Frank M. Hinman, McCutchen, Doyle, Brown & Enersen, San Francisco, California, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, Fern M. Smith, District Judge, Presiding. No. CV-94-01946-FMS.
 Before CHOY, BEEZER and HAWKINS, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Leonard Vinci appeals the district court's dismissal of his complaint for lack of standing. Vinci contends that, as a dismissed employee of Waste Management, Inc., he has standing under the Clayton Act, 15 U.S.C. § 15, to sue for damages for injuries resulting from an alleged violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, by Waste Management, Inc. and its subsidiary, Waste Management of Alameda County, Inc. (collectively, "Waste Management"). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 2
 * Leonard Vinci owned and operated Vinci Enterprises, Inc. ("VEI"), a waste recycling business. In 1989, VEI entered into a settlement agreement with Waste Management to settle a lawsuit against Oakland Scavenger Company alleging anti-competitive behavior. Oakland Scavenger was acquired by Waste Management while the lawsuit was pending. The settlement agreement required Waste Management to provide VEI with recyclable materials to operate its plant.
 
 
 3
 Vinci alleges that Waste Management breached the settlement agreement with the purpose of driving VEI out of business. Vinci alleges that Waste Management did this by, among other things, encouraging other recycling haulers to acquire accounts that VEI desired from Waste Management, refusing to deliver accounts to VEI, and intercepting materials en route to VEI's recycling facility. Thereafter, Waste Management acquired VEI's recycling plant and hired Vinci as its employee.
 
 
 4
 During his employment with Waste Management, Vinci alleges that senior management asked him to cooperate in anti-competitive schemes. These included a plan to drive Richard Valle, a joint venturer, out of business and a plan to engage in predatory price competition against Norcal, Inc. with the intent to ultimately acquire Norcal at a distressed price. On December 2, 1992, Waste Management fired Vinci. Vinci alleges that he was terminated because he refused to engage in the anti-competitive schemes.
 
 
 5
 On January 12, 1994, Vinci filed suit in California Superior Court alleging anti-competitive actions in violation of the California Cartwright Act. Cal. Bus. & Prof. Code §§ 16700-16770. Vinci's complaint was dismissed for lack of standing.[1] Vinci then filed the present lawsuit under section 4 of the Clayton Act. 15 U.S.C. § 15. The lawsuit alleges that the same anti-competitive actions violated sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1, 2.
 
 
 6
 The district court dismissed Vinci's first amended complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court reasoned that Vinci lacked standing under the Clayton Act to challenge the alleged anti-competitive acts engaged in by Waste Management. The court concluded that Vinci did not have standing to challenge the actions taken against VEI because the injury was to the corporation, not to Vinci as shareholder. The court also concluded that Vinci lacked standing to challenge his termination by Waste Management because Vinci failed to come within an exception to the general rule that a terminated employee may not sue his corporate employer under the Clayton Act.
 
 II
 
 7
 We review de novo a dismissal for failure to state a claim. Barrus v. Sylvania, 55 F.3d 468, 469 (9th Cir.1995). In addition, we review de novo questions of standing. Id. In reviewing the dismissal for failure to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. National Wildlife Fed'n v. Espy, 45 F.3d 1337, 1340 (9th Cir.1995).
 
 III
 
 8
 Vinci first argues that the district court erred because it did not view his allegations as a whole. He argues that the court should not have divided the standing issue into the two sub-issues whether he had standing as a shareholder and whether he had standing as a dismissed employee. Instead, he argues, the district court should have determined whether his combined status as both shareholder and dismissed employee was enough to provide standing. Vinci cites Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 698, 82 S.Ct. 1404, 1409-10, 8 L.Ed.2d 777 (1962) for the proposition that allegations must be viewed as a whole and should not be compartmentalized.
 
 
 9
 Vinci misreads Continental Ore. Continental Ore holds that substantive allegations of conspiratorial antitrust behavior should be considered as a whole. This proposition does not apply to the issue whether a person has standing to challenge antitrust behavior. The district court considered the alleged antitrust behavior, and then determined if Vinci had standing to challenge it. The district court examined all the possible theories of standing, of which there were two. The district court was obliged to consider both possibilities, and it did so. It did not err.
 
 IV
 
 10
 Vinci next contends that the district court erred in determining that he did not have standing to sue under section 4 of the Clayton Act.[2] Section 4 provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained ...." 15 U.S.C. § 15.
 
 
 11
 Although section 4 appears quite broad, it has been read more narrowly by the courts. In Associated General Contractors of California v. California State Council of Carpenters, 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 907 n. 31, 74 L.Ed.2d 723 (1983), the Supreme Court held that in determining whether a plaintiff has antitrust standing, "[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." The Court explained that there is not "a black-letter rule that will dictate the result in every case," but there are several factors that should be considered on a case-by-case basis. Id. at 536-45, 103 S.Ct. at 907-12. These factors include:
 
 
 12
 (1) the motive of the defendant--whether it specifically intended to cause plaintiff's harm; (2) the nature of plaintiff's injury--whether it was of a type the antitrust laws were designed to prevent; (3) the directness of the causal connection between the violation and the injury; (4) the extent to which abstract speculation underlies the allegations of injury and of their causation by defendant's antitrust violations; and (5) the risk of duplicate recoveries or complex apportionment of damages if plaintiffs such as this are permitted to recover.
 
 
 13
 Los Angeles Memorial Coliseum Comm'n v. National Football League, 791 F.2d 1356, 1363 (9th Cir.1986) (citing Associated Gen. Contractors, 459 U.S. at 537-45, 103 S.Ct. at 908-12), cert. denied, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987).
 
 
 14
 Vinci argues that he has standing because he suffered injury as a result of anti-competitive behavior by Waste Management. Vinci, in general, complains that he was driven out of the recycling business. More specifically, Vinci complains of two injuries: (1) damage to VEI and (2) his termination by Waste Management.
 
 
 15
 * First, Vinci complains that his recycling business was damaged by Waste Management's alleged breach of its settlement agreement and anti-competitive behavior. Such an injury to VEI does not provide Vinci, as a shareholder in VEI, standing to sue. "A shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name...." Solinger v. A. & M. Records, Inc., 718 F.2d 298, 299 (9th Cir.1983). This rule applies even if the injured shareholder is the sole shareholder, Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439 (9th Cir.1979), or if the shareholder alleges that the antitrust violations were intended to drive the individual out of the industry. Stein v. United Artists Corp., 691 F.2d 885, 897 (9th Cir.1982). "If shareholders were permitted to recover their losses directly, there would be the possibility of a double recovery, once by the shareholder and again by the corporation." Id. at 896-97.
 
 B
 
 16
 Second, Vinci complains that he was injured when his job with Waste Management was eliminated because he allegedly refused to participate in anti-competitive behavior. Vinci argues that our holding in Ostrofe v. H.S. Crocker Co., 740 F.2d 739 (9th Cir.1984) ("Ostrofe II "),[3] cert. dismissed, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985) compels a finding of standing for employees terminated for refusing to participate in anti-competitive behavior. We disagree.
 
 
 17
 The loss of a job is not the type of injury that the antitrust laws were designed to prevent. "The antitrust laws are intended to preserve competition for the benefit of consumers in the market in which competition occurs." In re Ins. Antitrust Litig., 938 F.2d 919, 926 (9th Cir.1991), rev'd in part on other grounds, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612, and cert. denied, --- U.S. ----, 113 S.Ct. 3034, 125 L.Ed.2d 721 (1993). "The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." Bhan v. NME Hospitals, Inc., 772 F.2d 1467, 1470 (9th Cir.1985). "[A] plaintiff who is 'neither a competitor nor a consumer' in the relevant market does not suffer 'antitrust injury.' " In re Ins. Antitrust Litig., 938 F.2d at 926 (quoting R.C. Dick Geothermal Corp. v. Thermogenics, Inc., 890 F.2d 139, 148 (9th Cir.1989)). Vinci was neither a competitor nor a consumer. His termination was not an antitrust injury. Furthermore, as for any antitrust injuries suffered by Valle or Norcal, Vinci is not the proper plaintiff to bring suit; Valle and Norcal are.
 
 
 18
 Although antitrust standing is generally limited to customers and competitors, in Ostrofe II we recognized that a dismissed employee had antitrust standing. 740 F.2d at 740. Contra Feeney v. Chamberlain Mfg. Corp., 831 F.2d 93, 95-96 (5th Cir.1987) (holding dismissed employee lacked standing under section 4 of the Clayton Act); Gregory Mktg. Corp. v. Wakefern Food Corp., 787 F.2d 92, 96 (3d Cir.) (rejecting rationale of Ostrofe II ), cert. denied, 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986); In re Indus. Gas Antitrust Litig., 681 F.2d 514, 519 (7th Cir.1982) (rejecting Ostrofe I holding and adopting Judge Kennedy's dissent in same), cert. denied, 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983). In Ostrofe II, a sales manager of a label manufacturing company was fired after he refused to cooperate in a price-fixing conspiracy, and he was subsequently boycotted from employment by the conspirators. 740 F.2d at 742. We found that he had standing both because he was the direct victim of a horizontal boycott and because he was the victim of a unilateral discharge by one of the conspirators. Id. at 742-48.
 
 
 19
 Vinci does not allege a boycott of his services by conspirators. He argues instead that Ostrofe II stands for the proposition that an employee who refuses to participate in anti-competitive behavior and is terminated as a result has antitrust standing. Vinci reads Ostrofe II much too broadly.
 
 
 20
 Ostrofe II recognized a limited exception to the general rule that a terminated employee lacks antitrust standing. In Ostrofe II, we held that Ostrofe had standing to challenge a price-fixing conspiracy in the market for labels because Ostrofe was more than merely injured by his termination. Ostrofe was an "essential participant" in the price-fixing scheme, and the scheme "could not succeed without his active cooperation." Id. at 745-46. When he refused to participate, "his discharge was a necessary means to achieve the conspirators' illegal end as well as an integral and inextricable part of the anticompetitive scheme." Id. Furthermore, because the anti-competitive behavior alleged was a price-fixing conspiracy, there was "no one else with as strong an incentive 'to vindicate the public interest in antitrust enforcement.' " Id. (quoting Associated Gen. Contractors, 459 U.S. at 542, 103 S.Ct. at 910-11).
 
 
 21
 The exception recognized in Ostrofe II is limited to those cases in which a dismissed employee is an "essential participant" in an antitrust scheme, the dismissal is a "necessary means" to accomplish the scheme, and the employee has the greatest incentive to challenge the antitrust violation. Cf. Exhibitors' Serv., Inc. v. American Multi-Cinema, Inc., 788 F.2d 574, 580 (9th Cir.1986) (holding that under Ostrofe II dismissed licensing agent corporation did not have antitrust standing to challenge splitting agreement between motion picture exhibitors because not essential participant in scheme and dismissal was not necessary to accomplish scheme). Vinci does not fall within this exception. Vinci did not allege any facts which suggest that he was essential to the alleged antitrust scheme or that his termination was necessary to accomplish the scheme. Furthermore, Valle and Norcal have a greater incentive as direct victims to challenge any antitrust acts in which Waste Management allegedly engaged.
 
 V
 
 22
 Vinci, as a shareholder in VEI, did not have standing to challenge alleged anti-competitive actions taken against VEI. Vinci also did not have standing as a dismissed employee. He was neither a competitor nor a customer, and he did not fall within the Ostrofe II exception.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The dismissal was affirmed by the California Court of Appeal in Vinci v. Waste Management, Inc., 36 Cal.App.4th 1811, 43 Cal.Rptr.2d 337 (1995)
 
 
 [2]
 In a separate argument, Vinci argues that he should have been found to have standing under section 16 of the Clayton Act. 15 U.S.C. § 26. Vinci's argument is fallacious. Vinci's complaint does not mention section 16. It states "[t]hese proceedings are brought under the provisions of Section 4 of the Clayton Act." In addition, section 16 provides for "injunctive relief against threatened conduct," and Vinci did not seek any such remedy
 
 
 [3]
 The Supreme Court vacated the judgment in Ostrofe v. H.S. Crocker Co., 670 F.2d 1378 (9th Cir.1982) ("Ostrofe I ") and remanded for further consideration in light of Associated Gen. Contractors, 459 U.S. 519, 103 S.Ct. 897