**FOREST AMBULANCE SERVICE, INC., et al., Plaintiffs,**

v.

**MERCY AMBULANCE OF RICHMOND, INC., et al., Defendants.**

Civil Action No. 3:96cv841.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 15, 1997.

Vernon Eugene Inge, Jr., LeClair Ryan, Richmond, VA, Charles Arthur Gavin, White, Blackburn & Conte, Richmond, VA, for plaintiffs Forest Ambulance Service, Inc., Georgina T. Forrest, Herbert L. Rodz, Sr.

Arnold R. Henderson, Roger Lee Gregory, Wilder & Gregory, Richmond, VA, for defendant Mercy Ambulance of Richmond, Inc.

Robert Hewitt Pate, III, Sarah C. Johnson, Hunton & Williams, Richmond, VA, for defendant Multi Hosp. High Tech Services.

Norman Bernard Sales, Office of City Attorney, Eugene Edward Mathews, III, Joseph Robert Brame, III, William G. Broaddus, McGuire, Woods, Battle & Boothe, John A. Rupp, Richmond City Attorney, Richmond, VA, for defendants Larry E. Chavis, Mayor, Viola O. Baskerville, Vice Mayor, John A. Conrad, Timothy M. Kaine, Joseph E. Brooks, Rudolph C. McCollum, Jr., James L. Banks, Jr., Leonidas B. Young, II, Rev., Anthony D. Jones.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

### PART I: INTRODUCTION

This matter is before the Court on the motions to dismiss filed by Mercy Ambulance Service of Richmond, Inc., ("Mercy"), Multi–Hospital High–Tech Services ("MHS"), and City Council. An amended complaint adding two individuals as plaintiffs and adding the Richmond Ambulance Authority ("RAA") as a defendant was filed after these motions were filed, but before they were heard on oral argument. The motions were amended in open Court to apply to the individuals' causes of action, and they are deemed to apply on behalf of the added defendant as well, thus bringing the entire lawsuit before the Court on these motions to dismiss. As is explained further below, the motions are granted in their entirety, and the case is dismissed as to all plaintiffs and defendants.

### PART II: FACTUAL BACKGROUND

The complaint contains two Counts arising out of the City of Richmond's actions in regulating the provision of ambulance services. The first Count alleges violations of the antitrust laws while the second alleges liability under 42 U.S.C. §§ 1983 and 1988. In 1979, the Virginia legislature delegated authority to the governing bodies of counties, cities, and towns to regulate the operation of "emergency medical services vehicles" through the issuance of franchises and permits. Va.Code § 32.1–111.14. The term "emergency medical services vehicle" was defined as "any privately or publicly owned vehicle, vessel or aircraft that is specially designed, constructed, or modified and equipped and is intended to be used for and is maintained or operated to provide immediate medical care to or to transport persons who are sick, injured, wounded or otherwise incapacitated or helpless." Va.Code § 32.1–111.1

In 1990, the City of Richmond became the first locality in the state to take advantage of the power invested by § 32.1–111.14 when it adopted Ordinance No. 90–45–68, requiring a permit or franchise to operate emergency medical service vehicles. All volunteer rescue squads already in operation were deemed to possess a permit. In addition, the City granted a limited interim permit to defendant MHS, which is a partnership of several hospitals, allowing it to transport people between its member facilities. In 1991, the City adopted a resolution declaring it in the City's best interest to create a unified emergency medical services system, created the RAA with the state legislature, and awarded the RAA a franchise to run that system. The RAA, a non-profit governmental entity, owns and maintains the ambulances, but it contracts out their actual operation. The bill creating the RAA empowers it to "provide emergency ambulance service originating in the City, [and] non-emergency ambulance service within the Commonwealth of Virginia." Richmond Ambulance Act, 1991 Acts Ch. 431. Defendant Mercy currently holds the contract to run the ambulances. The plaintiff Forest Ambulance has been unsuccessful in its efforts to obtain a permit to operate within the City of Richmond.

These facts, being predominately matters of legislation, are indisputable. In addition to these facts, the plaintiffs make the following allegations which must be accepted as true for the purposes of these motions: (1) that Mercy combined with the City of Richmond and the RAA to design and implement the monopolization of the ambulance market; (2) that they charge exorbitant fees for non-emergency transport to offset losses on emergency transport; (3) that the City of Richmond requires clear and convincing evidence of public necessity, plus a $5000 non-refundable application fee, before an application for a permit to provide emergency services will be granted; (4) that MHS is the only private company ever granted a permit to operate in the City of Richmond; (5) that MHS, with the consent of the City, operates beyond the scope of it's permit; (6) that Lifeline Ambulance, the only major provider of non-emergency ambulance services in the Richmond area other than MHS and Forest Ambulance, is operating under MHS's permit with the consent of the City; (7) that Forest Ambulance is thus the only major private provider of non-emergency ambulance services in the Richmond market not permitted

to operate within the City; (8) that all of the defendants have conspired or combined to monopolize and restrain trade; and (9) that the defendants' acts were designed to keep companies like Forest Ambulance from obtaining a permit for the purpose of selectively allowing competition in the market for ambulance services.

The plaintiffs also make certain allegations which may or may not have to be accepted as true because they contradict other parts of the complaint, because they contradict legislation cited in the complaint, the clarity and accuracy of which the Court can take judicial notice, or because they are actually legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986). The most important of these is that the laws and ordinances of the City and of the Commonwealth draw a distinction between the emergency and non-emergency services that are provided by emergency medical service vehicles. Also among them are the claim that there is no process for obtaining a permit to conduct non-emergency services, the claim that there is no process or method in place through which Forest Ambulance can obtain the right to conduct business, the assertion that MHS's permit has been rendered invalid because of changes in the membership of that partnership, and the position that there is no rational basis for the defendants' conduct.

## PART III: ANALYSIS

### A. THE PLAINTIFFS' ANTITRUST CLAIM

As a preliminary matter, the individuals named as additional plaintiffs in the amended complaint have no standing to bring an antitrust claim in their own names. It is well-settled that "[a] shareholder of a corporation injured by antitrust violations has no standing to sue in his or her name." *Vinci v. Waste Management, Inc.*, 80 F.3d 1372, 1375 (9th Cir.1996) (quoting *Solinger v. A & M Records, Inc.*, 718 F.2d 298, 299 (9th Cir. 1983)); *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 294 n. 2 (6th Cir. 1983) (listing cases where "other circuits have consistently rebuffed attempts by stock-

holders to bring antitrust actions."). It is of no consequence that the plaintiffs here are the sole shareholders of Forest Ambulance, or that they are officers and employees. *Vinci*, 80 F.3d at 1375. The complaint does not state the claim that these individuals personally suffered antitrust injury and are thus bringing the case on their own behalves, as opposed to in their status as shareholders. Even if it did, any such claim would be dismissed for the same reasons stated below for the dismissal of the claim by Forest Ambulance.

### 1. The Complaint Fails to State an Antitrust Claim Against City Council:

Plaintiff's claim for treble damages and other money damages against the City Council is barred by the Local Government Antitrust Act. 15 U.S.C. §§ 34–36. Under this Act, "[n]o damages ... may be recovered ... from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. § 35(a). The Act does not bar injunctive relief. *Cohn v. Bond*, 953 F.2d 154 (4th Cir.1991).

■ The Parker state action immunity doctrine makes state governments immune from claims under the Sherman Act and applies to claims for injunctive as well as monetary relief. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Although municipalities are not automatically immune, they enjoy immunity when acting pursuant to a "clear articulation of a state policy to authorize anticompetitive conduct." *Hallie v. Eau Claire*, 471 U.S. 34, 40, 105 S.Ct. 1713, 1717, 85 L.Ed.2d 24 (1985) (internal quotations and citations omitted). To receive immunity, a municipality must show that anticompetitive activity was a "foreseeable result" of the state legislature's grant of authority. *Hallie*, 471 U.S. at 42, 105 S.Ct. at 1718.

■ The language of Virginia Code § 32.1–111.14 shows that anticompetitive activity was the foreseeable, if not intended, result of the legislature's authorizing municipalities to regulate the provision of ambulance services. Section 32.1–111.14 provides that:

**300**

A. Upon finding as fact, after notice and public hearing, that exercise of the powers enumerated below is necessary to assure the provision of adequate and continuing emergency services and to preserve, protect and promote the public health, safety and general welfare, the governing body of any county or city is empowered to:

1. Enact an ordinance making it unlawful to operate emergency medical services vehicles or any class thereof established by the Board in such county or city without having been granted a franchise or permit to do so;

2. Grant franchises or permits to agencies based within or outside the county or city . . . ;

3. Limit the number of emergency medical services vehicles to be operated within the county or city and by any agency;

4. Determine and prescribe areas of franchised or permitted service within the county or city;

5. Fix and change from time to time reasonable charges for franchised permitted services;

        *     *     *     *     *     *

8. Establish other necessary regulations consistent with statutes or regulations of the Board relating to operation of emergency medical services vehicles.

Subsections one through five—three, four, and five in particular—expressly authorize anticompetitive conduct. Such a detailed and broad authorization to regulate emergency medical services vehicles would foreseeably "displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition." *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 373, 111 S.Ct. 1344, 1350, 113 L.Ed.2d 382 (1991). Nothing more is required to meet the foreseeability requirement and bring the City Council's actions and policies under the protection of *Parker*. Because the City of Richmond has done pre-

cisely what is authorized by § 32.1–111.14, its actions were clearly foreseeable and thus are immune from antitrust attack under the *Parker* doctrine.

■ Forest Ambulance urges the Court to adopt a reading of § 32.1–111.14 that allows localities to monopolize the provision of emergency ambulance services, but does not authorize the monopolization of non-emergency services. Forest Ambulance defines "emergency" services as life threatening or near life threatening calls, and argues that "non-emergency" ambulance transport—non-life threatening calls such as scheduled discharges and admissions, transport to clinical appointments, and routine transport between medical facilities and nursing homes—comprises a distinct market over which the City has no control. Complaint at ¶ 8. Such a reading is totally unsupported by the language of the statute, and it is most likely contrary to the statutory purpose as well. It runs contrary to the language of the statute because § 32.1–111.14 authorizes any regulation of "emergency medical services vehicles," a term whose definition includes vehicles specially designed or modified to "transport persons who are sick, injured, wounded or otherwise incapacitated or helpless." Notwithstanding the inclusion of the term "emergency" in the name of the vehicles subject to regulation, the statutes clearly authorize regulation of those vehicles regardless of the use to which they are put. It is the vehicle, rather than the use, which is being regulated. The plaintiff's reading of the statute runs contrary to the purpose of the legislation because the markets for emergency and non-emergency ambulance services are inextricably intertwined. Because at least part of the state legislature's concern was that private ambulance companies would "cherry pick" the more lucrative non-emergency services, it authorized localities to monopolize all ambulance services and take advantage of the opportunity to recoup some costs they might incur subsidizing non-lucrative emergency services.[1]

1. This explains why the preamble to § 32.1–111.14 only refers to assuring the provision of adequate and continuing emergency services. There was no problem with the provision of non-

emergency services. This is why the failure of the preamble to address non-emergency service does not help the plaintiffs' case.

The plaintiffs also urge the Court to create a "proprietary interest" exception to municipal immunity. Under this theory, a municipality engaged as an active participant in the market place is not entitled to immunity. This "exception" springs from dicta in *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). After rejecting a similar conspiracy exception, the Court noted that *Parker* immunity "does not necessarily obtain where the State acts not in a regulatory capacity but as a commercial participant in a given market." *Id.* at 374–75, 111 S.Ct. at 1351.

Although the Fourth Circuit has not addressed the issue, several courts of appeals have refused to apply the "proprietary interest" exception. *See, e.g., Paragould Cablevision, Inc. v. City of Paragould, Ark.*, 930 F.2d 1310, 1313 (8th Cir.1991) (holding that the exception is not a rule of law), *cert. denied*, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991); *Allright Colorado, Inc. v. City and County of Denver*, 937 F.2d 1502, 1510 (10th Cir.1991) (same), *cert. denied*, 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1993); *Limeco, Inc. v. Div. Of Lime of Mississippi Dept. of Agric. and Commerce*, 778 F.2d 1086, 1087 (5th Cir.1985) (no commercial exception to *Parker* doctrine). *But see Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 949 (Fed.Cir.1993), *cert. denied*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994) (declining to decide the issue).

In this case, the Court is not required to rule on the existence of the "proprietary interest" exception. Assuming, *arguendo,* that the exception exists, the facts of this case, most notably plaintiff's admission that the City has provided subsidies in excess of two million dollars to the Richmond Ambulance Authority, establish that the City Council's involvement in the market for ambulance services has not divested it of *Parker* immunity.

■ Next, the plaintiffs urge the Court to adopt the municipal immunity standard set forth in *Santos v. City of Houston Texas,* 852 F.Supp. 601 (S.D.Tex.1994). In *Santos,* the court ruled that a municipality is only entitled to immunity if: (1) the legislature clearly articulated its policy, and (2) the Ordinance

has been exercised in a reasonable manner. The *Santos* court held that the ordinance at issue had not been exercised in a reasonable manner because there was substantial evidence of arbitrary and selective enforcement. Consequently, the Court refused to extend *Parker* immunity to the City of Houston.

The complaint in this case states that of the three major ambulance services which existed before the City entered the market, Forest Ambulance is the only one which has not been granted any privileges under the new ordinances. The plaintiffs thus argue that the ordinance has not been exercised in a reasonable manner and thus states a claim under *Santos.* While it is true that this case is factually similar to *Santos,* this Court does not adopt the *Santos* test. In *Omni,* the Supreme Court engaged in a lengthy discussion of the contours of the municipal antitrust immunity doctrine. The Court stated that there are no additional exceptions to the doctrine: "with the possible market participant exception, any action that qualifies as state action is *ipso facto* ... exempt from the operation of the antitrust laws." *Omni,* 499 U.S. at 379, 111 S.Ct. at 1353 (internal quotation omitted).

In sum, the City Council is immune from antitrust liability under the *Parker* doctrine. This doctrine precludes imposition of both monetary and injunctive relief. *Cohn v. Bond,* 953 F.2d 154, 157–58 (4th Cir.1991), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3057, 120 L.Ed.2d 922 (1992). There are no recognized exceptions to the doctrine which would afford plaintiff relief. Accordingly, the antitrust claim against the members of the Richmond City Council is dismissed.

### 2. The Complaint Fails to State an Antitrust Claim Against the Private Defendants:

■ The *Parker* immunity doctrine shields private parties when two requirements are met: (1) the challenged conduct must implement a clearly articulated and affirmatively expressed state policy to displace competition with regulation; and (2) the municipality must actively supervise the private conduct. *Southern Motor Carriers Rate Conference v.*

*United States,* 471 U.S. 48, 55, 105 S.Ct. 1721, 1725–26, 85 L.Ed.2d 36 (1985). As discussed in relation to the municipal defendants, the first element has been met. The anticompetitive conduct at issue was a foreseeable result of the Virginia Legislature's enactment of § 32.1–111.14(2) which gives the City the power to "[g]rant franchises or permits to agencies based within or outside the county or city."

Regarding the second element, the plaintiff argues that the "active supervision" prong involves factual inquiries not amenable to resolution on a motion to dismiss. While immunity is a question of law and courts within the fourth circuit regularly decide the matter at the motions stage, *see e.g., Sandcrest Outpatient Services, P.A. v. Cumberland County Hospital System, Inc.,* 853 F.2d 1139 (4th Cir.1998), *Reasor v. City of Norfolk,* 606 F.Supp. 788, 800 (E.D.Va.1984), and while there is evidence of active supervision,[2] the plaintiff may be correct in stating that the Court is not in a position to make this decision now. In light of the private defendants' immunity under the *Noerr–Pennington* doctrine, (*Eastern R.R. Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *United Mine Workers v.Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)), however, a determination of *Parker* immunity is unnecessary.

The *Noerr–Pennington* doctrine is a corollary to *Parker* immunity. It is rooted in the First Amendment right of petition and the importance of free-flowing communication to government decision making. *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 399, 98 S.Ct. 1123, 1129, 55 L.Ed.2d 364 (1978). Under this doctrine, "where a restraint upon trade or monopolization is the result of a valid governmental action, as opposed to private action, those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint." *Allied Tube & Conduit Corp. v. Indian Head,* 486 U.S. 492, 499, 108 S.Ct.

1931, 1936, 100 L.Ed.2d 497 (1988) (internal quotation omitted).

Plaintiff insists that this doctrine does not shield the private defendants' behavior for two reasons. First, plaintiff argues that the defendants' conduct falls within the "commercial exception" to the *Noerr–Pennington* doctrine. In theory, this exception would apply when the defendant's conduct is primarily the result of commercial, rather than political, motivations. However, there is no recognized "commercial exception" to the doctrine. Furthermore, several circuits have expressly rejected the exception. *See, e.g., Greenwood Utilities Com. v. Mississippi Power Co.,* 751 F.2d 1484, 1505 (5th Cir.1985) ("we reject any notion that there is a commercial exception to *Noerr–Pennington.*"); *In re Airport Car Rental Antitrust Litigation,* 693 F.2d 84, 88 (9th Cir.1982), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3114, 77 L.Ed.2d 1368 (1983) ("There is no commercial exception to *Noerr–Pennington.*").

Plaintiff has misread *Allied Tube. Allied Tube,* involved lobbying within a *private* standard-setting association, rather than a governmental entity or legislative body. *Id.* at 495, 108 S.Ct. at 1934. In discussing the applicability of the *Noerr–Pennington* doctrine to lobbying efforts directed towards private organizations, the Court noted that the question of immunity turns "not only on [the lobbying's] impact, but also on the context and nature of the activity." *Id.* at 504, 108 S.Ct. at 1939. These considerations are legally irrelevant when the lobbying efforts are directed towards a governmental entity. "*Noerr* shields from the Sherman Act a concerted effort to influence *public officials* regardless of intent or purpose." *City of Columbia v. Omni,* 499 U.S. at 380, 111 S.Ct. at 1354.

Plaintiff also cites *United States v. North Dakota Hospital Association,* 640 F.Supp. 1028 (D.N.D.1986) in support of a "commercial exception" to the doctrine. This case is inapposite. *North Dakota Hospital Association* and the cases cited therein, discuss the inapplicability of the doctrine to "concerted

---

**2.** City Resolution No. 96–R50–61, adopted on April 9, 1996, resolving that there is no public necessity requiring either a change in franchise holders or the issuance of additional permits, is evidence of substantial oversight by the City of Richmond.

activity directed at the government as consumer or seller in the marketplace." *Id.* at 1041. In each case, private parties combined to gain an economic advantage in negotiations with the government. For example, in the cited case, several hospitals agreed not to extend a contractual discount to the Indian Health Service. There is no similar allegation here. Rather, plaintiff argues that the private defendants are working in concert with the City.

■ In the alternative, plaintiff argues that the *Noerr–Pennington* doctrine does not apply to MHS because its permit is no longer valid. Ordinance 10–59 in the Code of the City of Richmond states that "[n]o franchise or permit may be transferred by any means, direct or indirect, including without limitation, change of ownership or control...." The defendants concede that MHS, which began as a partnership of four hospitals, has shrunk such that only two original members remain. There is no allegation that members have been added. Plaintiff alleges that this change in ownership has made MHS' permit invalid and that MHS' *Noerr–Pennington* immunity ended when the permit was allegedly transferred. This does not advance the plaintiff's claim. Even operation of ambulances in a manner "illegal" under local law cannot form the basis of an antitrust violation.[3] *See Thompson Everett, Inc. v. National Cable Advertising,* 57 F.3d 1317, 1325 (4th Cir.1995). Therefore, it does not divest MHS of its *Noerr–Pennington* immunity.

Both of plaintiffs' proposed exceptions to the *Noerr–Pennington* doctrine being meritless, the private defendants are immune from suit on the antitrust claims. Accordingly, these claims are dismissed.[4]

## B. THE PLAINTIFFS' § 1983 CLAIM

Given that the antitrust laws are valid under the constitution, and that the state laws and local ordinances at issue here are valid under the antitrust laws, it would indeed be odd were the plaintiffs in this case able to state a claim under 42 U.S.C. §§ 1983 and 1988 with the same allegations that fail to state an antitrust cause of action, absent a showing of invidious discrimination. Thus, it is not surprising that Count II of the complaint fails to state a claim as well.

The § 1983 claim is based on the allegation that the defendants, under color of state law, conspired to deny the plaintiffs the ability to conduct business within the City of Richmond while permitting other competitors to do so. The legal theories posited to make the claim stick are that the plaintiffs are denied any process or method by which they can conduct business and that there was no rational basis for denying the plaintiffs the opportunity while granting it to others. The complaint thus attempts to make claims for denial of procedural due process, substantive due process, and equal protection of the laws.

### 1. The Complaint Fails to State a Due Process Claim Against the City:

■ In order for a plaintiff to state a claim for deprivation of procedural due process, it must first point out a constitutionally protected interest. The interests these plaintiffs point to are their ability to conduct business and their expectancy of being able to do so profitably. Construing these as liberty interests, Forest Ambulance fails to state a claim because the constitution does not protect any such interest where a corporation is concerned. A corporation simply does not have the same liberty interests as a living person. *See Norfolk Fed'n of Bus. Dist. v. Dept. Of Housing and Urban Development,* 932 F.Supp. 730 (738) (E.D.Va.1996), *aff'd* 1996 WL 671293 (4th Cir.1996) (per curiam) ("Corporations do not have fundamental rights;

---

3. In any event, the changes MHS has gone through do not necessarily violate Ordinance 10–59 and thus invalidate its permit. Every change of control is not necessarily a transfer. A permit is simply a right to do something, "transferring" a permit would presumably entail giving some party a right to act under that permit that it did not have before. Reducing the membership of MHS simply reduced the number of facilities between which MHS can transport patients and gave no party any additional benefit.

4. The Court need not inquire into the status of the Richmond Ambulance Authority, as the antitrust claim against it must be dismissed whether it is a branch of the city or whether it is a separate private defendant.

they do not have liberty interests, period.") (citation omitted).

It is of no consequence that the complaint was amended to include the two owners of Forest Ambulance as plaintiffs. Shareholders lack standing to bring a § 1983 action claiming injury to the corporation in which they own shares. *Flynn v. Merrick,* 881 F.2d 446, 450 (7th Cir.1989); *Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir.1981); *Erlich v. Glasner,* 418 F.2d 226, 227–28 (9th Cir.1969). A Fourth Circuit case that is instructive on this point is *Smith Setzer & Sons, Inc., et al., v. South Carolina Procurement Review Panel,* 20 F.3d 1311, 1317 (4th Cir.1994). In *Smith Setzer,* the Court of Appeals considered it "a fundamental rule that a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Id.* The Court then noted that the *only* exception to this rule exists where the wrongdoer owed a special duty to the stockholder originating from an origin that is distinct from the plaintiff's status as a stockholder. *Id.* Such is not the case here. As in *Smith Setzer,* any injury to the individual plaintiffs in the instant case arose solely out of their status as shareholders in the corporate plaintiff. The individual plaintiffs here might have standing to bring a § 1983 claim for deprivation of their liberty interests had they attempted as individuals to gain access to the ambulance market in the City of Richmond, or if Forest Ambulance were not an incorporated entity. *See Id.* However, the amended complaint makes no such claim.

The individual plaintiffs cannot avoid this rule simply by claiming that they were damaged "individually and directly" by any of the defendants. *Erlich,* 418 F.2d at 227–28. The amended complaint makes no reference to damage incurred by the shareholders apart from the alleged injury to Forest Ambulance. Nor does it allege that the shareholders have sought or have been denied the right to provide ambulance services within the City of Richmond, other than through their corporation, Forest Ambulance. Accordingly, the shareholders lack standing to bring a § 1983 claim.

Construing the complaint as alleging deprivation of a property interest does not help the plaintiffs, as any expectancy of profitable business is merely a unilateral expectation that does not rise to the level of entitlement necessary to state a claim under the Fourteenth Amendment. *See Biser v. Town of Bel Air* 991 F.2d 100, 104 (4th Cir.1993) (no cognizable property interest where municipal board of appeals has "any significant discretion" in deciding whether to grant zoning exception, permit, etc.), *cert. den.,* 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993). Forest Ambulance does not and cannot allege that this expectancy is "rooted in state law," as required to trigger procedural due process. *Id.* The city is endowed with absolute discretion and power as to the granting of ambulance franchises and permits, and nobody in particular—nobody at all even—has any constitutional right to be granted one. *See Gold Cross Ambulance and Transfer v. City of Kansas City,* 705 F.2d 1005, 1016–17 (8th Cir.1983) (rejecting procedural due process claim on facts nearly identical to those in the case at hand) *cert. den.,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985).

The plaintiffs also cannot state a claim for deprivation of substantive due process. Making out a substantive due process claim is a very difficult task that essentially requires showing governmental action that was so arbitrary or capricious that it shocks the conscience. *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Forest Ambulance makes no allegations in its complaint which could possibly support such a showing, as everything done by City Council was authorized by the legislature, whose actions in authorizing it were valid under the antitrust laws. A more specific test used in a Fourth Circuit case somewhat analogous to the one at bar required the plaintiff to show (1) a property interest, (2) deprivation thereof, and (3) that the state's action fell so far out of the realm of legitimate governmental action that no process could cure the deficiency. *Sylvia Development Corp. v. Calvert County, Md.,* 48 F.3d 810, 827 (4th Cir.1995) (plaintiff complaining about being denied a special zoning designation). The *Sylvia* court went on to detail just how narrow the scope of substan-

tive due process protection is, suggesting that the Fourth Circuit would not look kindly upon our invoking it here. *Id.* As stated above, there is no property interest at stake here, and if there were, the governmental action was entirely legitimate in that the City's actions were fully authorized by those of the state legislature, which were authorized under the federal antitrust laws.

### 2. The Complaint Fails to State an Equal Protection Claim Against the City:

■ Forest Ambulance concedes that its equal protection claim must be examined under the rational basis test. While its complaint asserts that it is a minority owned business, it is not claiming any sort of discriminatory animus; it is just complaining that the City's action was totally arbitrary and unrelated to any legitimate governmental interest. Under the rational basis test, Forest Ambulance's complaint fails to state a claim. That is because the City has an obvious legitimate interest in ensuring the provision of high quality ambulance services to all of its citizens. As was recognized by the state legislature, the adoption of a "public utility model," or some adaptation thereof, is a good and rational way to pursue this objective, and that is exactly what the City has done.

There is also a clearly rational basis supporting the grant of a limited interim permit to MHS. Because MHS's permit only allows it to transport people between its member facilities, it does not allow MHS to "cherry pick" throughout the city. It is thus rational to believe that MHS's permit does not impinge significantly upon the goals of Richmond's unified emergency service plan. Even if MHS were granted a permit to provide whatever ambulance services it desired, it would be rational for the City to think that the community needed the additional service and that MHS was the best private company to provide it. It would also be rational to believe that the community could not support the additional services of Forest Ambulance or of anyone else.

■ The foregoing explains how the City's actions in enacting ordinances and is-

suing permits and franchises does not give rise to liability under § 1983. However, the plaintiffs also claim that the City is liable under § 1983 for misapplying and selectively enforcing its own regulations regarding ambulance services. In particular, the plaintiffs allege that MHS and Lifeline are engaging in the extensive provision of ambulance services within the City, while the City stands idly by. While the City asserts that the provision of such services is illegal and that offenders would be punished if discovered, we must take the plaintiffs' allegations as true on the defendants' motions to dismiss. Still, these allegations do not give rise to a constitutional claim because this sort of claim requires a showing of "clear and intentional discrimination." *Sylvia,* 48 F.3d at 825.

In *Sylvia,* the plaintiff was a developer who was denied a special zoning designation that was granted to a similarly situated developer. He alleged that the zoning board had denied his application because he was a Czech immigrant, or at least because he was not a resident of Calvert County. In ruling on the defendants' motion for summary judgment, the Fourth Circuit stated that the plaintiff would have to establish that the County's decision was indeed based on one of these classifications before the Court could proceed to determine the legitimacy of the decision itself. 48 F.3d at 821. Absent such a showing, the Court refused to even entertain the equal protection challenge. It would not even apply the rational basis test absent evidence that the plaintiff's residency had been a factor. *Id.* After determining that the plaintiff could not carry his burden of showing that any classification was used, the Fourth Circuit rejected outright the plaintiff's alternate theory that he had an equal protection claim because the County's decision was both arbitrary and illegal under state law. "While an equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals, a showing of such disparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim." *Id.* at 825. "The district court ... was compelled to grant summary judgment for defendants on the equal protec-

tion claim [because] [a]ppellants cannot show that the County Boards' decision was based in whole or in part on a deliberate classification...." *Id.*

*Sylvia* is nearly identical to the case at hand, except that in the instant case the plaintiffs do not even allege that any action adverse to them was taken pursuant to any classification of any sort. This makes their case even weaker than that of the plaintiff in *Sylvia.* Because *Sylvia* requires that classification have been a factor before the equal protection clause is implicated, our plaintiffs fail to state a claim. As was noted in *Sylvia,* "[i]f disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim." *Id.* It is not the role of a federal court to entertain allegations that the City is not implementing its ordinances, regulations, and permits as they are written. Further, even were the City to allow other providers to operate, it is within it purview to do so if it thinks that such would suit its needs, and there would thus be a rational basis for such a decision.

The plaintiffs having suffered no deprivation of constitutionally guaranteed rights, their § 1983 claims against the City must be dismissed.

### 3. The Complaint Fails to State a Constitutional Case Against the Private Defendants:

██. Just as there have been no constitutional deprivations by the City, there have been none by the private defendants. Those claims must therefore also be dismissed for the same reasons as the claims against the City.

Even if the plaintiffs could show that they have been denied constitutional rights, however, their claims against the private defendants would have to be dismissed for failure to show the requisite state action required by the Fourteenth Amendment. While the complaint does allege that the non-governmental defendants acted under color of state law, more is required to show state action. Where the defendant is not a governmental entity, the Supreme Court has recognized three exceptions to the state action requirement. These include: (1) the existence of a symbiotic relationship to the extent that the actions of the private party are fairly treated as those of the state; (2) the exercise of coercive power by the state over the private entity; and (3) where the private party exercises powers traditionally the exclusive prerogative of the state. *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982); *Haavistola v. Community Fire Co. of Rising Sun,* 6 F.3d 211, 215 (4th Cir.1993). Forest Ambulance *has not even alleged* the existence of any of these factors, nor can its complaint fairly be construed to allege any of them. All that the complaint alleges is willful participation in conduct that allegedly makes the City liable under § 1983.

The defendants are correct in pointing out that the plaintiffs' citation to *Lugar v. Edmondson Oil,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), a Supreme Court case containing language that would appear to help the plaintiff, is inapposite. The quote from *Lugar* in the plaintiffs' brief only goes to the "under color of state law" question posed by § 1983. Where the § 1983 action is based upon violations of the Fourteenth Amendment, the plaintiff still must show "state action." Whereas all conduct that constitutes state action also constitutes conduct under color of state law, the reverse is not true; all conduct that is under color of state law does not necessarily constitute state action. *Lugar,* 457 U.S. at 935, n. 18, 102 S.Ct. at 2752, n. 18. Again, the plaintiffs make no allegations which support a conclusion that the non-governmental defendants' conduct constituted state action.

### PART IV: CONCLUSION

The plaintiffs' complaint fails to state a cause of action under either the antitrust laws or the constitution. As such, this case is DISMISSED WITH PREJUDICE as to all plaintiffs and all defendants.