[No. A066486. First Dist., Div. One. July 25, 1995.]

LEONARD G. VINCI, Plaintiff and Appellant, v.
WASTE MANAGEMENT, INC., et al., Defendants and Respondents.

**COUNSEL**

Joseph L. Alioto for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, Alfred C. Pfeiffer, Jr., James L. Hunt, Frank M. Hinman and Amy J. Metzler for Defendants and Respondents.

## Opinion

**DOSSEE, J.**—In this antitrust action the sole question presented for our review is whether plaintiff has standing to sue his employer for alleged monopolistic practices. We conclude he does not, and we affirm the judgment of dismissal.

### Procedural History

Plaintiff Leonard G. Vinci owned and operated a recycling business, Vinci Enterprises, Inc., which was in competition with Oakland Scavenger Company. In 1986 Vinci Enterprises sued Oakland Scavenger for alleged anticompetitive practices. Oakland Scavenger was eventually acquired by defendant Waste Management, Inc. The lawsuit between Vinci Enterprises and Oakland Scavenger was settled in 1989, and under the terms of the settlement agreement, Oakland Scavenger's successor, Waste Management, agreed to provide Vinci Enterprises with quality materials for its recycling operation.

At some unspecified time thereafter, Waste Management took over the operation of the 77th Avenue facility which had been operated by Vinci Enterprises. As part of that acquisition, plaintiff was employed by Waste Management, but on December 2, 1992, he was fired.

More than a year later, on January 12, 1994, plaintiff filed the present lawsuit against Waste Management alleging, among other things, wrongful termination, breach of the settlement agreement, and anticompetitive practices in violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.).

Waste Management demurred to the complaint. Waste Management argued that plaintiff's claim for wrongful termination was barred by the one-year statute of limitations and that plaintiff was not a proper party to sue either for breach of the settlement agreement or for antitrust violations. The trial court agreed with Waste Management and sustained the demurrer. Plaintiff appeals from the judgment of dismissal.

On appeal plaintiff does not dispute that the statute of limitations had expired on his claim for wrongful termination. Nor does he challenge the trial court's conclusion that plaintiff, as an individual, has no standing to sue for breach of the settlement agreement entered into between Waste Management and Vinci Enterprises, Inc. Plaintiff's argument on appeal is confined to the question whether plaintiff has standing to sue under the Cartwright Act.

## DISCUSSION

The Cartwright Act prohibits combinations in restraint of trade. (Bus. & Prof. Code, § 16720.) Under the act, "[a]ny person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor . . . ." (Bus. & Prof. Code, § 16750, subd. (a).)

In interpreting similar language in the federal antitrust law, the United States Supreme Court observed that the doctrine of antitrust standing is somewhat different from standing as a constitutional doctrine. "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." (*Associated General Contractors* v. *Carpenters* (1983) 459 U.S. 519, 535, fn. 31 [74 L.Ed.2d 723, 736-737, 103 S.Ct. 897].) The court recognized that "contradictory and inconsistent results" had been reached in prior cases due to the absence of a precise test to determine antitrust standing. (*Id.* at p. 536, fn. 33 [74 L.Ed.2d at p. 737].) However, the court declared that the infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that would dictate the result in every case. (*Id.* at p. 536 [74 L.Ed.2d at p. 737].) Instead, the court set out a number of factors to be evaluated on a case-by-case basis to determine whether a particular plaintiff is a proper party to bring an antitrust action. (*Id.* at pp. 537-544 [74 L.Ed.2d at pp. 737-742].)[1]

█ The factors identified by the court which favor a finding that the plaintiff is a proper party include the following: (1) the existence of an antitrust violation with resulting harm to the plaintiff; (2) an injury of a type which the antitrust laws were designed to redress;[2] (3) a direct causal connection between the asserted injury and the alleged restraint of trade; (4) the absence of more direct victims so that the denial of standing would leave a significant antitrust violation unremedied; and (5) the lack of a potential for double recovery. (459 U.S. at pp. 537-544 [74 L.Ed.2d at pp. 737-744].)

[1]Because the Cartwright Act has objectives identical to the federal antitrust acts, the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 320 [216 Cal.Rptr. 718, 703 P.2d 58]; *Partee* v. *San Diego Chargers Football Co.* (1983) 34 Cal.3d 378, 382 [194 Cal.Rptr. 367, 668 P.2d 674], cert. den. 466 U.S. 904 [80 L.Ed.2d 153, 104 S.Ct. 1678]; *Mailand* v. *Burckle* (1978) 20 Cal.3d 367, 376 [143 Cal.Rptr. 1, 572 P.2d 1142].)

[2]Waste Management relies almost exclusively upon this factor, articulated by the Supreme Court in *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.* (1977) 429 U.S. 477, 489 [50 L.Ed.2d 701, 712-713, 97 S.Ct. 690]. Yet, in *Associated General Contractors* the Supreme Court clarified that the nature of the plaintiff's alleged injury is but one of several factors to be considered.

■ In the present case, plaintiff alleges that Waste Management has been attempting to monopolize the business of garbage collection and recycling in the San Francisco Bay Area by acquiring its competitors and by engaging in predatory practices designed to injure or destroy its competitors. Plaintiff alleges two distinct forms of injury: (1) the loss of his recycling business and (2) the loss of his job with Waste Management. We analyze them separately.

### (1) *Loss of Recycling Business*

The complaint alleges that in 1989 and 1990, after the previous lawsuit was settled, Waste Management breached the settlement agreement by depriving Vinci Enterprises, Inc., of the quality material needed to operate its recycling business. It did so by enlisting other recycling haulers to take accounts from Waste Management (presumably accounts that Vinci Enterprises wanted for itself), by refusing to deliver certain accounts to Vinci Enterprises, by intercepting and diverting materials destined for Vinci's recycling facility, and by procrastinating in procuring a lucrative account promised to Vinci Enterprises.

The complaint does not reveal the exact relationship between plaintiff and Vinci Enterprises, Inc., but even if we read into the complaint an allegation that plaintiff was sole shareholder of the corporation, we conclude that plaintiff lacks standing to sue. The party directly injured by Waste Management's conduct was not plaintiff, an individual, but Vinci Enterprises, Inc., a corporation. The remedy lies with the corporation, not the shareholder, even if the injured shareholder is the sole shareholder. (*Solinger* v. *A & M Records, Inc.* (9th Cir. 1983) 718 F.2d 298, 299; *Stein* v. *United Artists Corp.* (9th Cir. 1982) 691 F.2d 885, 896; *Sherman* v. *British Leyland Motors, Ltd.* (9th Cir. 1979) 601 F.2d 429, 439.) In fact, to allow a shareholder to sue on his own behalf would run the risk of double recovery—once to the shareholder and once to the corporation. (See *Stein, supra*, 691 F.2d at p. 897.)

### (2) *Loss of Job*

The complaint alleges that Waste Management tried to put out of business one Richard Valle, who was engaged in a joint venture with Waste Management. Further, the complaint alleges that in September 1992 Waste Management sought to engage in predatory price competition with Norcal, Inc., which held the garbage contract for San Francisco, in order to damage Norcal so that Waste Management could acquire the company at a distress price. Finally, the complaint alleges that as an employee of Waste Management, plaintiff refused to participate in these anticompetitive practices,

although ordered to do so by his superiors at Waste Management, and he was fired as a result.

It is clear from the complaint that at the time plaintiff lost his job plaintiff was neither a consumer nor a competitor in the market in which trade was restrained. Plaintiff was an employee. The injury he suffered, the loss of his job, was not the type of loss the antitrust statute was intended to forestall. (*Fallis* v. *Pendleton Woolen Mills, Inc.* (6th Cir. 1989) 866 F.2d 209, 211; *Feeney* v. *Chamberlain Mfg. Corp.* (5th Cir. 1987) 831 F.2d 93, 96; *Program Engineering* v. *Triangle Publications* (9th Cir. 1980) 634 F.2d 1188, 1191; *Solinger* v. *A & M Records, Inc.* (9th Cir. 1978) 586 F.2d 1304, 1311, cert. den. 441 U.S. 908 [60 L.Ed.2d 377, 99 S.Ct. 1999].) It did not result from Waste Management's acquisition of market power. (*In re Industrial Gas Antitrust Litigation* (7th Cir. 1982) 681 F.2d 514, 519, cert. den. 460 U.S. 1016 [75 L.Ed.2d 487, 103 S.Ct. 1261].)

Moreover, the alleged targets of Waste Management's anticompetitive scheme, Richard Valle and Norcal, are the normal parties to remedy any antitrust violations. Plaintiff's remedy for his own injury is a wrongful termination action. Plaintiff cannot resurrect that time-barred cause of action by framing his lawsuit as an antitrust claim. We hold that plaintiff is not a proper party to bring an action for antitrust violations by his employer.[3]

We are not persuaded otherwise by *Ostrofe* v. *H.S. Crocker Co., Inc.* (9th Cir. 1984) 740 F.2d 739. In that case the court held that an employee could sue his employer and other conspirators after he was fired for refusing to participate in a price-fixing conspiracy and was boycotted from employment by all the conspirators.

*Ostrofe* is distinguishable, as the trial court here correctly found. First, the plaintiff in *Ostrofe* suffered direct injury as the victim of a horizontal boycott. (740 F.2d at p. 742; see *Bhan* v. *NME Hospitals, Inc.* (9th Cir. 1985) 772 F.2d 1467, 1470, fn. 4.) Further, he was an essential participant in the price-fixing scheme, which could not have succeeded without his active participation. Thus, his discharge was an integral part of the anticompetitive conduct. (*Ostrofe* v. *H.S. Crocker Co., Inc., supra,* 740 F.2d at pp. 745-746.) And, finally, because Ostrofe was a necessary part of the conspiracy, there was no one else with as strong an incentive to vindicate the public interest in antitrust enforcement. (*Id.* at p. 746.) The antitrust violation would have gone unremedied if the plaintiff had been denied standing. (*Id.* at p. 747.)

---

[3]In light of our decision we find it unnecessary to reach the argument raised in Waste Management's supplemental brief that plaintiff is collaterally estopped from proceeding with his state court action because his lawsuit filed in federal court was dismissed. The requests for judicial notice of the federal court proceedings are denied.

In the present case, in contrast, plaintiff has made no allegations to bring him within the *Ostrofe* case. He has not alleged any employment boycott. Nor has he alleged that he was so essential to the anticompetitive scheme that his discharge was itself an anticompetitive act. And, as we have discussed, direct victims do exist who could remedy the antitrust violations. In subsequent cases, even from the Ninth Circuit, *Ostrofe* has been limited to its unique facts. (See *Lucas* v. *Bechtel Corp.* (9th Cir. 1986) 800 F.2d 839, 846; *Exhibitors' Service, Inc.* v. *American Multi-Cinema* (9th Cir. 1986) 788 F.2d 574, 580.) We decline to extend it further.

The judgment of dismissal is affirmed.

Strankman, P. J., and Newsom, J., concurred.