Filed 7/21/14  Son v. Lee CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KYUNG HEE SON et al., | D063192 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00055454-CU-FR-NC) |
| MARK M. LEE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Law Offices of James E. Lund and Nathan Low for Plaintiffs and Appellants.

Kaloogian & Fuselier, Lowell Robert Fuselier, David Hayek and David J. Hart for Defendants and Respondents.

In 2009, defendant Mark Lee sold his florist business (Tri-City Florist) to plaintiff Ivy Global Corporation, Inc. (IGC), a corporation formed by plaintiff Kyung Hee Son (Son) to acquire and operate Tri-City Florist.  When the business deteriorated, Son filed

this action against Mark[1] and his wife, Joyce, alleging a variety of claims sounding in both contract and tort.

In phase one of a bifurcated trial, the court heard and considered Son's evidentiary presentation before ruling she did not have standing to pursue the contract-based claims, and therefore dismissed them, because the court found IGC rather than Son was the contracting party that purchased Tri-City Florist. The court also dismissed Son's claim under California's unfair competition laws, and her claim for declaratory relief, because it similarly ruled she did not have standing to pursue those claims.

In phase two of the trial, the court heard the parties' evidence pertaining to the claims for fraud and negligent misrepresentation. The court's statement of decision found neither Mark nor Joyce (together defendants) committed fraud or made any negligent misrepresentations in connection with the sale of Tri-City Florist, and therefore found in favor of defendants. After the court rejected numerous objections to the proposed statement of decision, and denied numerous posttrial motions, the court entered judgment in favor of defendants and awarded them costs and attorney fees. Son and IGC (together plaintiffs) timely appealed.

---

[1]     We refer to Mark and Joyce Lee by their first names to differentiate between them, and intend no disrespect by doing so.

# I

## FACTUAL BACKGROUND[2]

A. The Negotiations to Sell the Floral Business

Mark began doing business as Tri-City Florist in 1986 and Joyce was hired as the shop manager. However, as the result of age and health, Mark wanted to retire from the retail florist business and decided to sell Tri-City Florist. To expedite his retirement from retail florist sales, he decided to sell it at a substantial discount from its fair market value. Mark met with Son four or five times to discuss her purchase of Tri-City Florist. Although Mark hoped to retire, he never told Son that Joyce wanted to retire.

Son had no prior experience operating a floral business. She wanted to ensure that Joyce would continue working for Tri-City Florist after the sale to help Son learn the floral business, and Joyce did continue working for Tri-City Florist for several months after IGC acquired it.

The purchase contract specified IGC was to acquire "all assets of the Business, including . . . web sites." During the negotiations and prior to the closing for the sale of the business, the parties did not discuss (and Son was not aware of) any websites owned by Tri-City Florist. Instead, Son first learned Tri-City Florists had two websites (Tri-

---

2    We are required to view the facts most favorably to the judgment. (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203.) Because plaintiffs' brief contains a one-sided recitation of the facts supporting their position, without any effort to state facts that support the ruling, we could deem waived any contentions regarding the sufficiency of the evidence. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) We instead elect to examine the issue on the merits, although our factual recitation bears little resemblance to plaintiffs' brief.

cityflorist.com and Tri-cityflorist.net) when Mark was training her about invoicing.[3] Similarly, the parties did not discuss (and Son was not aware of) another website, nobutamaweddingstudio.com, which Joyce controlled. It appears that website, along with two other websites (sandiegoweddingflower.com and weddingflowersandiego.com) were adjuncts to Joyce's wedding planning business. The latter three websites displayed pictures of arrangements Joyce had made for former clients as part of the former clients' marriage ceremony, rather than to advertise that those arrangements were available for sale from Tri-City Florist.

B. The Sale of Tri-City Florist to IGC

On October 28, 2009, Mark accepted an offer from Son to sell Tri-City Florist to her. However, on advice from her certified public accountant, Son formed IGC for tax purposes and, with Mark's agreement, the parties substituted IGC as the buyer of Tri-City Florist. The parties amended the escrow instructions to reflect IGC as the buyer, and all further documentation between Mark and Son (including the promissory note in favor of Mark) was signed on the buyer's behalf by Son in her capacity as President of IGC.

C. Tri-City Florist's Business Deteriorates

Son had no prior experience operating a retail florist shop and learning the business was overwhelming for her. After Joyce stopped working for Tri-City Florist, sales began to decline.

---

[3] Tri-City Florist's two websites, Tri-Cityflorist.com and Tri-Cityflorist.net, were maintained through two different floral distribution networks, FTD and Telepro.

At the time Tri-City Florist was sold to IGC, Joyce did not intend to compete with Son in the retail florist business. However, by March 2010 Joyce was not working enough hours at Tri-City Florist to satisfy herself and, when a bride from Orange County called Joyce about doing wedding consultation work, Joyce decided to do the wedding "on the side." Joyce did not refer the bride to Son because Son did not do wedding consultation work. The amount of sales of flowers for weddings by Tri-City Florist declined dramatically.

Sales to an important client, Tri-City Medical Center (TCMC), remained steady for some time after Joyce stopped working for Tri-City Florist but then began falling. Sometime in the latter half of 2010, Son learned Joyce had sent flowers to TCMC. By 2011, Joyce was soliciting TCMC's business on behalf of Joyce's business, Nobutama Wedding Studio.

II

PROCEDURAL HISTORY

Son filed her complaint, in her individual name, alleging numerous contract claims and several tort and statutory claims.[4] At trial, defendants moved in limine for an order

---

[4]      The contract-based claims alleged in Son's First Amended Complaint against defendants were for rescission (based on fraud, negligent misrepresentation, mistake, and failure of consideration) and for damages based on breach of contract and breach of the covenant of good faith and fair dealing. Son also pleaded claims for unfair competition and for declaratory relief against defendants. The tort-based claims against defendants were for fraud and negligent misrepresentation, and for intentional interference with prospective economic advantage.

5

bifurcating two issues for court trial: whether Son had standing to pursue any of the contract-based claims, and the proper interpretation of the noncompetition clause.

The court ordered bifurcation on these two issues, and heard evidence and argument on whether Son could prosecute the contract-based claims in her individual name even though the parties had agreed to substitute IGC as the buyer of Tri-City Florist. Defendants argued that, because IGC was substituted in place of Son as the buyer under the contract and the debtor on the promissory note, IGC was the only party that could pursue the contract-based claims. Son argued she could pursue the contract-based claims, even though IGC had been substituted in her place as the buyer under the contract; Son alternatively argued she should be allowed to amend her complaint to add IGC as a plaintiff. The court ruled in favor of defendants, and therefore granted defendants' motion for judgment on the claims for rescission (based on fraud, mistake, and failure of consideration), and for damages based on breach of contract and breach of the covenant of good faith and fair dealing, and the claims for unfair competition and for declaratory relief. The court also denied Son's motion to amend the complaint to permit IGC to intervene as an additional plaintiff, because trial had commenced and defendants would be prejudiced by the last-minute addition of a new plaintiff. However, the court concluded Son could pursue her claims for fraud and negligent misrepresentation because she was the person to whom the misrepresentations were allegedly made. Son's motion for reconsideration was opposed by defendants, although defendants agreed to stipulate IGC could intervene to prosecute any alleged claims it might have had insofar as they

were premised on the same facts underlying Son's fraud and negligent misrepresentation claims. The court denied Son's motion, except insofar as defendants had stipulated that IGC could intervene as to the remaining claims for fraud and negligent misrepresentation, and proceeded to phase two: trial on the claims for fraud and negligent misrepresentation.

After hearing the evidence, the trial court found Son and IGC had not shown, by a preponderance of the evidence, that Mark or Joyce committed fraud or negligent misrepresentation in connection with the sale of Tri-City Florist. The court noted Son's allegations of misrepresentation were (1) whether Mark and Joyce committed fraud by misrepresenting their intent to retire and not compete with Tri-City Florist, and (2) whether Mark and Joyce committed fraud by not transferring the assets of the wedding planning/consultation business to IGC. The court found Mark and Joyce did not commit fraud by misrepresenting their intent to retire and not compete at the time the sale to IGC was consummated, but instead found the decision to resume competing with Tri-City Florist was made long after the sale to IGC had closed. The court also found that, although there was miscommunication regarding the scope of the sale of the retail floral business as opposed to the wedding planning/consultation business, these mistakes were caused by the real estate broker (who did not testify) and, because the broker reported primarily to plaintiffs, his mistakes could not be attributed to Mark and Joyce.

Plaintiffs requested a statement of decision explaining both the ruling on the contract-based claims and on the court's findings on the fraud and negligent misrepresentation claims. A proposed statement of decision incorporating the trial court's

rulings was prepared, and plaintiffs lodged objections to it. The court adopted the proposed statement of decision as its final statement of decision, and entered judgment in favor of Mark and Joyce.

Plaintiffs moved for a new trial and to set aside the judgment. Both parties moved for an award of attorney fees and costs, and both parties moved to tax costs. The court denied plaintiffs' motion for attorney fees, granted defendants' motion for attorney fees as against Son only, and denied plaintiffs' motions for a new trial and to set aside the judgment. Plaintiffs timely appealed.

III

ANALYSIS OF RULING ON CONTRACT-BASED CLAIMS

Plaintiffs assert the court erred when it determined Son did not have standing to prosecute the contract-based claims because the evidence, viewed most favorably to Son, showed substituting IGC for Son as the party to the purchase contract was not intended to extinguish her rights to sue on that purchase contract. Son also asserts that IGC's subsequent assignment to Son of its right to pursue those claims supported her motion for reconsideration of the ruling. She alternatively argues it was an abuse of discretion to deny her motion to amend the complaint, or IGC's motion to intervene, to allow IGC to pursue those claims in this proceeding.

A. Standard of Review

The trial court, after hearing Son's testimony and reviewing documentary evidence, concluded IGC rather than Son was the real party in interest for prosecuting the

8

pleaded contract-based claims, as well as for prosecuting any unfair competition claim or declaratory relief claim, and therefore dismissed those claims.

The proper standard for our review is the standard of review applicable to a judgment entered under Code of Civil Procedure section 631.8,[5] because the judgment in phase one was entered after the trial court heard and weighed the evidence presented by plaintiffs. (*Commonwealth Memorial, Inc. v. Telophase Society of America* (1976) 63 Cal.App.3d 867, 869, fn. 1 ["In a trial by the court, which this was, a motion for nonsuit is no longer recognized. The correct motion is a motion for judgment. [Citations.] Accordingly, we treat the order granting defendant's motion for nonsuit as a judgment for defendant pursuant to . . . section 631.8."]; accord, *Ford v. Miller Meat Co.* (1994) 28 Cal.App.4th 1196, 1200 ["Initially, we note that although the parties contend the court granted Alpha Beta's motion for nonsuit, in a trial by the court a motion for nonsuit is not recognized. The correct motion is for judgment pursuant to . . . section 631.8, the purpose of which is to enable the court, after weighing the evidence at the close of the plaintiff's case, to find the plaintiff has failed to sustain the burden of proof, without the need for the defendant to produce evidence."].) As explained in *Plaza Home Mortgage, Inc. v. North American Title Co., Inc.* (2010) 184 Cal.App.4th 130, 135:

> " ' "The purpose of . . . section 631.8 is 'to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.' [Citation.] Under the statute, a court

5 All statutory references are to the Code of Civil Procedure unless otherwise specified.

9

acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence. [Citations.]" ' [Quoting *Kinney v. Overton* (2007) 153 Cal.App.4th 482, 487.] [¶] ' "The standard of review of a judgment and its underlying findings entered pursuant to Section 631.8 is the same as a judgment granted after a trial in which evidence was produced by both sides. In other words, the findings supporting such a judgment 'are entitled to the same respect on appeal as are any other findings of a trial court, and are not erroneous if supported by substantial evidence.' " ' [Quoting *Allegretti & Co. v. County of Imperial* (2006) 138 Cal.App.4th 1261, 1269]."

We do not view the evidence most favorably to Son, but instead review the factual determinations most favorably to the judgment. However, because the issue of standing is a question of law, we accord no deference to the court's legal analysis, but instead review de novo the application of the facts as found by the trial court to the legal question of whether Son had standing to pursue the contract based claims. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299.)

B. Analysis of the Ruling on Standing

The trial court's statement of decision found that, although Son was the original signator of the offer (accepted by Mark on October 28, 2009) to acquire Tri-City Florist from Mark, Son subsequently formed IGC for tax purposes and, with Mark's agreement, IGC was substituted as buyer of Tri-City Florist under the contract. In pursuit of this agreement, the parties amended the escrow instructions to reflect IGC was the buyer and, significantly, Mark accepted a $50,000 promissory note from IGC (rather than from Son individually) to finance part of the purchase price. After that substitution, it was IGC that

10

acquired and operated the business in its corporate name. On these facts, the court's statement of decision concluded, under *Vinci v. Waste Management, Inc.* (1995) 36 Cal.App.4th 1811, IGC rather than Son was the real party in interest to pursue any contract-based claims.

On appeal, plaintiffs assert *Vinci* was not controlling because the trial court erred when it impliedly found Son's and Mark's agreement to substitute IGC as the buyer of Tri-City Florist operated as a novation to create a new contract and extinguish Son's contractual rights and obligations. *Vinci* clearly and correctly held that, when a corporate entity is injured by a third party, the sole shareholder of the corporate entity does not have standing to bring an action for redress of that injury because "[t]he remedy lies with the corporation, not the shareholder, even if the injured shareholder is the sole shareholder." (*Vinci v. Waste Management, Inc., supra*, 36 Cal.App.4th at p. 1815.)

Plaintiffs do not dispute that, if IGC *was* the contracting party in whose favor the noncompetition clause operated and who was injured by any alleged breaches of contract by Mark, *Vinci* would control. Instead, plaintiffs argues *Son* was the party to the contract in whose favor the noncompetition clause operated and who was injured by the breach, and the court's implied finding that substitution of IGC operated as a novation of the original contract was not supported by any substantial evidence.

A novation occurs when the parties substitute a new obligation for an existing one. (Civ. Code, § 1530.) "The substitution is by agreement and with the intent to extinguish the prior obligation. [Citations.] The substitution of a new obligation for an existing one

11

may be either (1) a new obligation between the same parties, or (2) a new obligation arising *because of new parties*, either a new debtor or new creditor." (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 431, italics added.) "A novation thus amounts to a new contract which supplants the original agreement and 'completely *extinguishes* the original obligation . . . .' [Quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 906, p. 811, italics added by Witkin]." (*Ibid.*)

A novation exists where a new debtor is substituted for prior one, who is released from contractual obligations by the creditor. (*Alexander v. Angel* (1951) 37 Cal.2d 856, 860.) The test is whether the parties intended to extinguish rather than merely modify the original agreement (*Howard v. County of Amador* (1990) 220 Cal.App.3d 962, 977), and "the 'whole question is one of fact and depends upon all the facts and circumstances of the particular case' [citation], with the weight and sufficiency of the proof being matters for the determination of the trier of the facts under the general rules applicable to civil actions." (*Alexander,* at pp. 860-861.)

There is substantial evidence to support the conclusion that, when the parties agreed to substitute a new debtor (IGC) and release the prior one (Son) from the ongoing obligations owed to Mark by the debtor/buyer, they objectively intended to accomplish a novation and extinguish Son's rights and obligations under the former contract. The evidence showed the business was acquired by IGC (rather than Son), the debtor on the promissory note for the balance of the purchase price was IGC (rather than Son), and the note was collateralized by IGC's pledge of the business assets that IGC acquired from

12

defendants.  Although plaintiffs argue there was conflicting evidence suggesting the parties did not intend to accomplish a novation,[6] the trial court was entitled to weigh the evidence (§ 631.8) and conclude the parties intended the substitution of IGC in place of Son to accomplish a novation.  (*Manfre v. Sharp* (1930) 210 Cal. 479, 482 ["The trial court here, after considering all of the [evidence], specifically found [a novation.] . . .  It is true that there is some conflict in the evidence on that point, but such conflict was entirely a matter for the trial court."].)

Son raises numerous other claims asserting that, even if the trial court correctly found IGC rather than Son was the party to the purchase contract's rights and obligations, she nevertheless had standing on a variety of other theories, including (1) as intended third party beneficiary to the contract between IGC and Mark, (2) by reason of her "personal stake," (3) "by reason of representation," and (4) because she only "partially

---

6    For example, plaintiffs argue there was no evidence of consideration, which is required for novation.  (See, e.g., *Klepper v. Hoover* (1971) 21 Cal.App.3d 460, 463.) However, "the release of the old debtor is sufficient to constitute the requisite consideration for the new debtor's promise" (*Wells Fargo Bank v. Bank of America, supra,* 32 Cal.App.4th at p. 432), and the evidence showed Son was released from her obligation to pay for the business and sign the promissory note in her individual name. She also claims the evidence showed she had no intent to accomplish a novation. However, the cited testimony contained no suggestion Son and Mark discussed and understood that the substitution of IGC did not release her from her agreement, and her subjective understanding and intent is irrelevant to the proper interpretation of the contract.  (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 ["California recognizes the objective theory of contracts [citation] under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.' [Citation.]  The parties' undisclosed intent or understanding is irrelevant to contract interpretation."].)

assigned" her interest in the contract. However, her "personal stake" and "by reason of representation" arguments appear to derive from the fact that she was the sole shareholder in IGC and (as such) provided IGC with the capital necessary to close IGC's acquisition of Tri-City Florist. That is insufficient to confer standing on a shareholder for purposes of pursuing claims owned by his or her corporation. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 54-55.) Her "third party beneficiary" argument, apparently not raised below and therefore waived (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1450), is unpersuasive because Son is not identified as a person or member of a class the contracting parties specifically intended to benefit (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1023), and although Son would incidentally benefit (as sole shareholder of IGC) from Mark's performance of his contract with IGC, that is insufficient to confer standing. (*City & County of San Francisco v. Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105, 120-121.) She also suggests the substitution of IGC was merely a "partial assignment" of her rights, but there is no evidence showing she retained some part of the rights under the purchase agreement in her individual name, which is fatal to this claim.

    C. <u>Analysis of Rulings on Motions to Amend or to Permit IGC to Intervene</u>

    Plaintiffs next argue that, even assuming the trial court correctly ruled IGC was the real party in interest to sue on the contract-based claims, the trial court nevertheless erred in dismissing these contract-based claims because (1) Son obtained an assignment from IGC allowing her to pursue those claims and therefore her motion for

14

reconsideration (and her motion for leave to amend her complaint) should have been granted, and (2) IGC should have been granted leave to intervene to prosecute the contract-based claims in its own name.

A trial court has discretion when considering a motion for leave to amend or a motion for leave to intervene, and we will not disturb its rulings on such motions absent an abuse of that discretion. (*Edwards v. Superior Court* (2001) 93 Cal.App.4th 172, 180 [motion for leave to amend]; *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 875 [motion for permissive joinder]; *Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 203 [motion to intervene].)

After trial commenced, and after the trial court ruled (as to the issues presented in phase one) Son did not have standing to prosecute the contract-based claims, Son filed a motion for reconsideration alleging that, after the court's adverse ruling on her standing, IGC had assigned to Son the right to pursue the contract-based claims. Her motion for reconsideration asserted (1) she should be granted leave to amend her complaint to plead the assignment; (2) the court should order IGC joined as a necessary party under section 389, subdivision (a), to pursue the contract-based claims; or (3) the court should grant IGC's motion for leave to intervene under section 387 to pursue the contract-based claims. Defendants opposed all of these motions, asserting (1) there were no recently discovered facts warranting reconsideration, and (2) granting any of these motions would prejudice the defense by interjecting new issues (such as lost profits damages and

15

whether IGC was in good standing to prosecute the case) after trial commenced. The court denied the motions because of the prejudice to defendants.

Son asserts denial of her motions was an abuse of discretion, arguing there would have been no prejudice because all of the issues were actually tried in connection with trial of the fraud claims. However, granting the motions would have required defendants to defend against the numerous contract-based claims (as well as against the unfair competition and declaratory relief claims),[7] and plaintiffs cite no authority suggesting it is an abuse of discretion to deny a motion *during trial* seeking permissive joinder under section 389, subdivision (a), or seeking leave to intervene under section 387, when the granting of such a motion would interject new issues into the proceeding. At a minimum, it would have required resolution of the new issue of whether IGC was in good standing and entitled to pursue any litigation. Moreover, granting the motions could also have required defendants to prepare and present defenses on the merits to the nine dismissed causes of action for which defendants, because of their confidence in the merits of their

---

[7]    On appeal, Son also argues it was error to dismiss the unfair competition and declaratory relief claims. Although plaintiffs correctly note that violation of the noncompetition clause could support injunctive relief under the unfair competition laws, Son cites no authority to support the argument that *she* (rather than IGC) had standing to pursue those claims. We therefore deem her assertions as to these claims waived. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention deemed waived because "Appellant did not formulate a coherent legal argument nor did [he] cite any supporting authority."]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["The dearth of true legal analysis in [his] appellate briefs amounts to a waiver of the [contention] and we treat it as such."].)

16

defense on standing, might not have been prepared. We cannot conclude the trial court, in denying these motions, abused its discretion.

IV

ANALYSIS OF RULINGS ON FRAUD CLAIMS

Plaintiffs argue the judgment in favor of defendants on the fraud-based claims must be reversed because (1) the statement of decision did not resolve issues material to the fraud-based claims, and (2) the statement of decision is inconsistent with the undisputed facts. Because plaintiffs' arguments are rooted in their attack on the sufficiency of the court's statement of decision, we first examine the controlling principles before turning to the merits of plaintiffs' arguments.

A. Principles Governing a Statement of Decision

Section 632 provides that at the request of any party, a court must issue a statement of decision that states "the factual and legal basis for its decision as to each of the principal controverted issues at trial." A "principal" issue "is one which is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case." (*Kuffel v. Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 565.) A statement of decision does not need to address every legal and factual issues raised by the parties, but instead "need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision. [Citations.] '[A] trial court rendering a statement of decision under . . . section 632 is required to state only ultimate

17

rather than evidentiary facts because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them. [Citation.]' [Quoting *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599; [citations].] In other words, a trial court rendering a statement of decision is required only to set out ultimate findings rather than evidentiary ones." (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125.)

If a proposed statement of decision either omits resolution of a principal controverted issue, or its statement is ambiguous, and the record shows such omission or ambiguity was timely brought to the attention of the court, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party *as to those facts or on that issue*." (§ 634, italics added.) However, " '[i]t still is the rule that the findings of ultimate facts include by necessary intendment the findings on all intermediate facts necessary to sustain them [citation], and where this is so, the court may reject a request for specific findings that in reality is a request for a statement of evidentiary facts.' " (*McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 996.) In other words, specific findings are not required if they are necessarily implied by a general finding. " '[A] finding on a particular issue is an implied negation of all contradictory propositions [citation].' " (*St. Julian v. Financial Indemnity Co.* (1969) 273 Cal.App.2d 185, 194.)

B. Analysis

The trial court's proposed statement of decision identified the principal controverted issues on plaintiffs' fraud-based claims to be whether defendants committed

18

fraud by (1) promising to retire and not compete with the floral business they were selling but not doing so, and (2) intentionally retaining assets of Tri-City Florist defendants promised would be part of the sale.

On the first principal controverted issue, the court noted the contract did contain a noncompetition clause, and Mark and Joyce did violate that clause by later engaging in floral sales and competing within the exclusion zone. However, the court went on to state it "does not find, however, that either defendant committed fraud or negligent misrepresentation in the sale of the business [because] *the Court is not persuaded that the defendants intended to compete at the time the sale was consummated.* The evidence was more persuasive that *the decisions, which led to the improper competition, occurred well after the sale was finalized.*" (Italics added.)

We are satisfied this statement adequately explained the findings of the court on the first principal controverted issue: whether defendants, at the time they represented that they intended to retire and not compete with the floral business they were selling to plaintiffs, knew that representation was false. Certainly, evidence that Mark and Joyce promised not to compete with Tri-City Florist and subsequently broke that promise can support an action for breach of contract. However, mere nonperformance of a promise is inadequate to show promissory fraud. (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183.) Although "[c]ertain broken promises of future conduct [i.e., deceit] may . . . be actionable[,] . . . [¶] [t]o maintain an action for deceit based on a false promise, one must specifically allege and prove, among

19

other things, that the promisor *did not intend to perform at the time he or she made the promise* and that it was intended to deceive or induce the promisee to do or not do a particular thing." (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158-159, italics added.)

The court specifically found that, although Mark and Joyce did compete some time after the sale was consummated, there was no evidence they intended to compete *at the time the sale was consummated*, but instead made the decisions that led to the improper competition well after the sale was finalized. We conclude this was an adequate statement of the factual and legal basis for its decision on the first principal controverted issue--that defendants were not liable for promissory fraud because the court was unpersuaded they intended to compete when they made the contrary representation to induce plaintiffs to buy the business--and plaintiffs do not on appeal articulate why this finding would not be fatal to plaintiffs' fraud claim insofar as the fraud claim was premised on the "promise not to compete" allegation.[8]

---

[8] Moreover, to the extent plaintiffs sought to assert a claim for *negligent* misrepresentation based on the alleged false promise to not compete, there is an independent reason to affirm the judgment. As *Tarmann* explained, given the requirement that an action in tort for a false promise of future conduct requires proof the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing, "an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud. The specific intent requirement also precludes pleading a false promise claim as a negligent misrepresentation, i.e., 'The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.' [Citation.] Simply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. Moreover, we decline to establish a new type of actionable deceit: the negligent false

The other principal controverted issue on plaintiffs' fraud-based claims was the allegation that Son "understood" the website associated with Joyce's wedding planning business (nobutamaweddingstudio.com) was among the assets of Tri-City Florist to be included within the sale, and defendants concealed they had no intent to transfer control over that website as part of the sale of Tri-City Florist to IGC. The statement of decision, addressing plaintiffs' claim of fraud based on this alleged concealed intent not to perform, found there was "miscommunication regarding the scope of the sale of the floral business *as opposed to the wedding planning/consultation.*" (Italics added.) However, the court found (1) this miscommunication "was caused primarily by the broker," and (2) the broker "reported primarily to plaintiff, and therefore his 'mistakes' cannot be automatically attributed to the defendants."

The statement of decision was adequate because it described the factual and legal basis for rejecting plaintiffs' alternative theory of promissory fraud: it found any understanding held by Son regarding nobutamaweddingstudio.com (i.e. the acquisition of Tri-City Florist included the acquisition of a website Joyce used in her *separate* activity as a wedding planner and consultant to display the floral arrangements she created for weddings) was a *misunderstanding* not attributable to any representations made by Mark or Joyce, but was instead attributable to the mistakes made by Son's agent, and there was no evidentiary basis for attributing to Mark or Joyce any miscommunication by the

promise." (*Tarmann v. State Farm Mut. Auto. Ins. Co., supra,* 2 Cal.App.4th at p. 159, fn. omitted.)

21

broker to Son that the scope of the assets being acquired by Son included this separate website. Although plaintiffs argue on appeal this aspect of the statement of decision was inadequate, because the statement of decision did not specify whether or not the court found Mark and Joyce *intended* not to convey nobutamaweddingstudio.com to Son, the statement of decision "need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision." (*Muzquiz v. City of Emeryville, supra,* 79 Cal.App.4th at p. 1124; accord, *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67-68 [" 'A trial court rendering a statement of decision under . . . section 632 is required only to state ultimate rather than evidentiary facts. A trial court is not required to make findings with regard to detailed evidentiary facts . . . . All that is required is an explanation of the factual and legal basis for the court's decision regarding such principal controverted issues at trial . . . .' "].) Here, the court rejected plaintiffs' fraud claim without specifying whether Mark and Joyce intended not to convey nobutamaweddingstudio.com to Son because it found Son's belief this website was to be included in the sale was *mistaken*, and the mistake could not be attributed to Mark or Joyce. The finding there was no *representation* as to their intent concerning the website adequately described the factual and legal basis for rejecting this theory of promissory fraud and simultaneously rendered any finding as to defendants' *true* intent superfluous.[9]

---

[9]   Plaintiffs also attack the statement of decision as "inconsistent with the undisputed facts" and argue it is therefore "against the law." Plaintiffs cite the testimony in which Mark admitted he did not tell Son he intended to keep the business moniker of

We conclude the statement of decision was adequate and, because there is substantial evidence to support the trial court's findings, we must affirm the judgment in favor of defendants on plaintiffs' fraud-based cases of action.

V

THE MOTION FOR NEW TRIAL

Plaintiffs argue the trial court abused its discretion when it denied their motion for a new trial under section 657. They argued below, and reassert on appeal, that a new trial was justified because of "[i]rregularity in the proceedings" (§ 657, subd. (1)), "[i]nsufficiency of the evidence" (§ 657, subd. (6)), and "[e]rror in law" (§ 657, subd. (7)). However, our review of plaintiffs' arguments convinces us (with but one exception) each allegation of irregularities in the proceedings, insufficiencies in the evidence, and errors in law is merely a repackaging of the same substantive arguments we have already addressed and rejected, and we therefore cannot conclude denial of the new trial motion as to those alleged errors was an abuse of discretion. The only additional "irregularity" identified below, and resurrected on appeal, is that certain documents from the custodian

"Nobutama Wedding Studio" and the website "nobutamaweddingstudio.com." However, when Mark testified he did not say anything to Son about keeping the website, he explained, "Why should I tell her? [¶] . . . [¶] I didn't sell Nobutama Wedding Studio. I sold Tri-City Florist," and Mark subsequently explained he agreed to and did convey "Tri-City Florist [¶] . . . [¶] . . . the entire floral business I sold [¶] . . . [¶] . . . [but not including Nobutama Wedding Studio because] Nobutama [has] never been part of Tri-City Florist." Thus, the statement of decision is not inconsistent with the undisputed evidence, because the cited testimony does not undercut the trial court's central finding that Son's mistaken understanding (i.e. the assets of Nobutama Wedding Studio were part of Tri-City Florist's assets) was not attributable to any representations made by Mark or Joyce.

23

of records for Tri-City Medical Center were excluded from evidence on the grounds that these documents were heavily redacted. However, plaintiffs cite no authority demonstrating the ruling was erroneous. More importantly, even assuming the documents should have been admitted, plaintiffs have not shown how exclusion of those documents was prejudicial, fatal to the claim of error. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480 [prejudice will not be presumed and burden rests with party claiming error to demonstrate not only error but also a resulting miscarriage of justice; failure to establish prejudice from erroneous exclusion of evidence deemed harmless].)

## VI

### THE ATTORNEY FEES RULING

The court granted defendants' motion to recover their attorney fees and costs and awarded fees and costs against Son only. The court concluded defendants were the prevailing parties, the fee provision in the contract would have supported an award of attorney fees in Son's favor had she prevailed on the contract claims, and that under *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 384, fn. 7 (*Real Property Services*), a plaintiff who sues for breach of a contract containing an attorney fees clause can be liable for attorney fees even if the basis for the ruling against the plaintiff was that the plaintiff did not have standing to prosecute the contract claims.

Son argues the award of attorney fees was improper because (1) the court's reasoning with respect to the attorney fees award was inconsistent with its ruling that she

24

did not have standing to prosecute the contract claims, and (2) the court's ruling was based on a misapplication of the doctrine of judicial estoppel.[10]

A. General Principles

Attorney fees are not recoverable as costs unless expressly authorized by statute or contract. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 127.) If a contract specifically provides for an award of attorney fees incurred to enforce the provisions of the contract, the prevailing party in an action on the contract is entitled to reasonable attorney fees. (Civ. Code, § 1717, subd. (a); *Reynolds*, at p. 128.)

As a general rule, attorney fees are awarded only when the action involves a claim covered by a contractual attorney fee provision and the lawsuit is between signatories to the contract. (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 544-545.) However, under some circumstances, the courts have applied the reciprocity principles of Civil Code section 1717 in actions involving signatory and nonsignatory parties.

10    Son also asserts the award of fees was improper because she prevailed on the contract claims. She asserts that because her complaint sought a declaration that Mark and Joyce violated the noncompetition clause, and the statement of decision included one favorable factual finding--Mark and Joyce "violated the noncompete clause"--it was error to find defendants were the prevailing parties. Son's argument ignores that the court did *not* grant relief under her claim for declaratory relief, but instead granted judgment on that claim in favor of defendants on the grounds that only IGC had standing to seek that relief. Moreover, even if the trial court did issue a factual finding favorable to Son, plaintiffs' argument fails because it is for the trial court to determine the prevailing party, and we must affirm that ruling on appeal absent an abuse of discretion. (See, e.g., *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574.) The *Heather Farms* court noted a trial court should not employ a "rigid interpretation of the term 'prevailing party' and, instead, [urged trial courts to] analyze[ ] which party had prevailed on a practical level." (*Ibid.*) We cannot conclude the trial court abused its discretion when it determined defendants were the prevailing parties.

25

(*Reynolds Metal Co. v. Alperson, supra*, 25 Cal.3d at p. 128 ["Its purposes require [Civil Code] section 1717 be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant."].)  In *Reynolds*, a plaintiff brought an action against two shareholders and directors of two bankrupt corporations, seeking to hold them personally liable for the debts owed to the plaintiff by the corporations (including a claim on unpaid promissory notes containing an attorney fees clause) under a theory that defendants were alter egos of the corporations.  Defendants, who had not signed the promissory notes, prevailed and sought attorney fees under the terms of the notes, and the Supreme Court held defendants were entitled to recover their attorney fees under the reciprocity requirement of Civil Code section 1717, reasoning that because the plaintiff would have been entitled to recover its fees against defendants had plaintiff prevailed, defendants were likewise entitled to their fees when they prevailed.

Although *Reynolds* involved an action by a signatory plaintiff against nonsignatory defendants, its rationale has also been applied in actions by a nonsignatory plaintiff seeking to enforce a contract against a signatory defendant.  (See, e.g., *Lewis v. Alpha Beta Co.* (1983) 141 Cal.App.3d 29, 33; *Jones v. Drain* (1983) 149 Cal.App.3d 484, 487; *Manier v. Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 508; *Brusso v. Running Springs Country Club, Inc.* (1991) 228 Cal.App.3d 92, 108-111.)  In

26

*Real Property Services, supra,* 25 Cal.App.4th 375, the court reviewed these and other

authorities and explained:

> "[I]n cases involving nonsignatories to a contract with an attorney
> fee provision, the following rule may be distilled from the applicable
> cases: A party is entitled to recover its attorney fees pursuant to a
> contractual provision only when the party would have been liable for
> the fees of the opposing party if the opposing party had prevailed.
> Where a nonsignatory plaintiff sues a signatory defendant in an
> action on a contract and the signatory defendant prevails, the
> signatory defendant is entitled to attorney fees only if the
> nonsignatory plaintiff would have been entitled to its fees if the
> plaintiff had prevailed."  (*Id.* at p. 382.)

With these principles and authorities in mind, we examine the propriety of the attorney

fees award here.

B. Analysis

In this action, Son (a nonsignatory on the contract in her individual capacity) sued

defendants (signatories to a contract containing an attorney fees clause) for breach of that

contract.  Son makes no argument that, had she prevailed in showing she had the *right* to

recover on the contract and that defendants had breached the contract, she nevertheless

would not have been entitled to collect attorney fees under the contract from defendants.

That is, had Son timely pleaded and proved she was assignee of IGC's rights, or had

defendants waived the defense of Son's lack of standing to enforce the contract (see, e.g.,

*Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1338), or had Son otherwise

demonstrated she was entitled to enforce the contract, she could have recovered fees

under the contract as against defendants.  Accordingly, because defendants would have

been liable for attorney fees had Son prevailed on these arguments, defendants are

27

entitled to collect attorney fees from Son because she did not prevail on those contentions.

We view *Real Property Services, supra,* 25 Cal.App.4th 375, as controlling here. In *Real Property Services,* the nonsignatory plaintiff was a sublessee from the master-lessee, and sued the defendant (the master-lessor) for breach of the covenants of a master lease under the theory plaintiff was a third-party beneficiary of the master lease. (*Id.* at 383.) The master lease contained an attorney fees clause and, after the trial court dismissed plaintiff's action based in part on lack of standing but denied the defendant its attorney fees (*id.* at p. 378), the defendant appealed, arguing it should have been awarded attorney fees. (*Id.* at p. 377.) The appellate court agreed the defendant should have been awarded its attorney fees, and specifically stated:

> "We reject [nonsignator plaintiff's] contention that the propriety of the denial of the attorney fee award is dependent upon the *reason* for the judgment. Any resolution of this action to enforce the original lease agreement must be accompanied by an award of reasonable attorney fees to the prevailing party. *This is so whether the judgment is based upon the merits or lack of standing.* . . . [T]he underlying suit was to enforce the lease . . . [and] any lack of standing by RPS to bring the lawsuit does not alter the fact that RPS sued the City to enforce the contract, thereby entitling the prevailing party to its attorney fees." (*Id.* at p. 384, fn. 7, italics added.)

The trial court below specifically cited and relied on *Real Property Services* when it awarded attorney fees here, and Son makes no effort to distinguish that case from the facts presented in this case. Instead, Son asserts the attorney fees award was based on cases that have misapplied the doctrine of judicial estoppel as applied to attorney fees awards. She argues later cases, such as *Sweat v. Hollister* (1995) 37 Cal.App.4th 603

28

(disapproved on other grounds by *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609) and

*M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th

456 (*M. Perez Co.*), have explained why judicial estoppel is an improper basis for

awarding attorney fees. To the extent *Sweat v. Hollister* and *M. Perez Co.* have rejected

the notion that merely *pleading* a right to attorney fees in the complaint estops an

unsuccessful plaintiff from contesting a prevailing defendant's right to collect attorney

fees (see, e.g., *Sweat v. Hollister,* at pp. 616-617 ["The mere fact that a plaintiff alleges

an entitlement to attorney fees does not create an entitlement to same by a prevailing

defendant; it is only when the plaintiff would have been entitled to fees had the plaintiff

prevailed that a defendant will obtain a reciprocal right."], fn. omitted; accord, *M. Perez

Co.*, at p. 467), we are in agreement with those cases. However, the court in *M. Perez

Co.* explained that, although it disavowed its dicta in *International Billing Services, Inc.

v. Emigh* (2000) 84 Cal.App.4th 1175 that a plaintiff who claims a right to attorney fees

and loses must pay attorney fees, that court did so only because that dicta "sweeps too

broadly." (*M. Perez Co.*, at pp. 465-465.) The *M. Perez Co.* court reiterated its

adherence to the rule that a prevailing party is entitled to attorney fees if it can prove it

would have been liable for attorney fees had the opponent prevailed, and explained:

> "The problem with *International Billing Services* is that it assumes
> the underlying litigation is over the validity of the contract in general
> or the attorney fee provision in particular. Where a plaintiff claims
> breach of a contract containing an attorney fee provision and the
> defendant asserts there is no contract and wins, it will have
> established that there is no contract and, hence, no attorney fee
> provision. Nevertheless, since the plaintiff would have been entitled
> to attorney fees if the plaintiff had succeeded in proving there was a

29

contract, courts have recognized a right of the defendant to recover attorney fees even if defendant proves there was no contract, in order to further the purposes of Civil Code section 1717. [Citations.] *However, where the underlying litigation is not over the validity of the contract or the attorney fee provision, this rationale disappears.* Where a plaintiff claims breach of a contract containing an attorney fee provision *and the defendant does not deny the existence of the contract*, litigating instead the issue of breach, *success by the defendant does not entail a finding that there is no contract, and hence no attorney fee provision.* The prevailing party, whether plaintiff or defendant, would be entitled to attorney fees under the contract. By the same token, where the contract does not contain an attorney fee provision, even though the plaintiff seeks attorney fees, success by the plaintiff on the breach of contract claim does not entail a finding of a valid attorney fee provision. The prevailing party would not be entitled to attorney fees. Thus, the distinction is between success on the underlying claim of breach and success in proving there is an applicable attorney fee provision." (*M. Perez Co.*, *supra,* 111 Cal.App.4th at pp. 467-468, italics added.)

Thus, the *M. Perez Co.* court's disapproval of judicial estoppel is limited to those cases in which the prevailing defendant premises its recovery of attorney fees solely on the plaintiff's *allegation* that the contract contains an attorney fees clause, even though the contract in fact did *not* contain such a clause and therefore the plaintiff (even had he prevailed) could *not* have collected fees. However, the *M. Perez Co.* court continued to adhere to the *International Billing Services* approach when the contract *did* contain an attorney fees clause, and the dispute between the parties was over the *existence* of the contract (or the existence of an attorney fees clause) rather than over whether there had been a breach of the contract by the defendant.

The present litigation falls under that aspect of *International Billing Services,* the vitality of which the *M. Perez Co.* court reaffirmed. Son asserted defendants breached a

30

contract containing an attorney fee provision, and defendants asserted *there was no contract with Son*, and defendants prevailed.  Paraphrasing the *M. Perez Co.* court, defendants "established that there is no contract [with Son] and, hence, no attorney fee provision.  Nevertheless, since [Son] would have been entitled to attorney fees [had she] succeeded in proving there was a contract [between Son and defendants], courts have recognized a right of [defendants] to recover attorney fees even if [they] prove[d] there was no contract, . . . to further the purposes of Civil Code section 1717."  (*M. Perez Co.*, *supra,* 111 Cal.App.4th at p. 467.)

We conclude, under applicable principles, the trial court correctly found defendants were entitled to recover their attorney fees, and we therefore affirm the award of attorney fees against Son.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.